O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NENA L. MURRAY,<br><br>               Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security Administration,<br><br>               Defendant. | CASE NO. ED CV 06-00906 RZ<br><br>MEMORANDUM OPINION<br>AND ORDER |

Because none of Plaintiff's arguments for reversal or remand of the underlying step-five denial of disability benefits is persuasive, the Court will affirm.

**I.**

**DR. DE VERA'S OPINION**

Plaintiff first argues that the Administrative Law Judge – in finding that, although Plaintiff has a "panic disorder" that is "severe," her condition was not disabling, *see* Administrative Record ("AR") 242, 243, 245 – gave short (and selective) shrift to a November 4, 2005 psychiatric evaluation of her by Jesse De Vera, M.D. *See* AR 294-95. The underlying opinion did discuss Dr. De Vera's report, as Plaintiff concedes, but she faults the opinion for failing to mention specifically (a) Dr. De Vera's Global Assessment

of Functioning Scale ("GAF")[1] of 40 for Plaintiff on the date of that examination, *see* AR 295; and (b) the doctor's impression of bipolar disorder and anxiety disorder. Pl.'s Br. at 2-3. The Court disagrees that error occurred.

The opinion correctly noted the context of Plaintiff's November 2005 visit, in that she first had sought treatment at that clinic in October of that year, two years after she was discharged from a different clinic for non-compliance with her prescribed routine. *See* AR 312. In other words, the November 2005 assessment represents, at best, a snapshot of Plaintiff's "before" condition, when she was not receiving treatment. Two months afterwards, another physician noted that she had been compliant with her medication and reported improvement, *see* AR 293 ("I'm doing better"; "I feel more relax[ed]"; "mood is better"), as the Administrative Law Judge observed. AR 243. Thus, as to both parts of this first argument, Plaintiff fails to show that any possibly disabling mental impairments reflected in this particular report met the 12-month durational requirement for disability.

As to the doctor's mention of bipolarity and anxiety, Plaintiff fails to show that, even if these conditions satisfied the durational requirement (which they do not), they would merit any *greater* mental-health-related work limitations than those already found by the Administrative Law Judge – who, based on Plaintiff's "severe" panic disorder, restricted her to unskilled, simple, repetitive tasks in which she would work with things, rather than with other people.  AR 243-44.

In sum, the Administrative Law Judge fairly addressed Dr. De Vera's report in context. Plaintiff's argument, at bottom, is that the opinion errs by not mentioning two potentially disability-supporting details *in* that report. For the foregoing reasons, the Court disagrees.

---

[1] *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) ("DSM-IV") at 32.

## II.

## UNNAMED THERAPIST'S REPORT

Plaintiff's next argument is somewhat similar to her first, namely that the Administrative Law Judge "selectively ignor[ed] aspects of" an August 2001 mental health assessment by an unnamed therapist. Pl.'s Br. at 4-5; AR 317-22. (The therapist recorded Plaintiff's subjective reports about sadness, outbursts of temper, social anxiety, forgetting appointment times and where she has put items, and her use of heroin and alcohol. AR 318, 319. Later in the assessment, the therapist described Plaintiff's mood as "depressed" and, *based on Plaintiff's subjective accounts*, her anxiety as "severe." *See* AR 320, 321 ("severe" anxiety explained as being based on "Clt [inability] to go into stores[.] [F]ears being put on the spot[.] [W]hat family thinks of her.")) But Plaintiff concedes that the unnamed therapist is not an "acceptable medical source" unless he or she "was working in conjunction with Dr. De Vera," *see* Pl.'s Br. at 5, yet she supplies no evidence that the therapist *was* working with Dr. De Vera, and only speculates so.

In the alternative, Plaintiff argues that the therapist's assessment still carries some weight as third party testimony. Third parties' testimony can supply useful information about how a claimant's alleged impairments affect his ability to engage in gainful employment, *see* 20 C.F.R. § 404.1513(d)(4), and the Administrative Law Judge thus may reject such testimony only for specific reasons germane to the particular witness. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Failure by an Administrative Law Judge to discuss substantial favorable statements by competent third-party witnesses may be considered "harmless error" only if the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [undiscussed lay] testimony, could have reached a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the cited report expressly indicates that it records Plaintiff's "initial" assessment at the clinic – effectively another "before" picture of her mental state, not "after." AR 317. She began medical *treatment* only thereafter, with psychiatrist Jeremiah

Umakanthan, M.D., although her medication compliance was so poor that she was discharged from the clinic altogether (as noted in the preceding section) for non-compliance, and at least one treatment note indicated that she had resumed drinking alcohol excessively. *See* AR 306 (recording Plaintiff's own report that she "still drinks beer up to 8-9 at a time"). Viewed in context, rather than in isolation, the therapist's 2001 intake assessment does not lend additional support to her claim, even if fully credited. Any possible error by the Administrative Law Judge in not specifically discussing that assessment was harmless.

### III.
### PLAINTIFF'S CREDIBILITY

Plaintiff next argues that the Administrative Law Judge "failed to make any credibility findings at all" to support his partial rejection of her pain and anxiety testimony. Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" some degree of pain or other subjectively-reported symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain, and how that pain affects the claimant's ability to work, only if the judge supplies specific, cogent reasons supported by substantial evidence in the record, *see Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996), sufficient to permit this Court to conclude that the Administrative Judge's disbelief was not arbitrary. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994).

Here, Plaintiff clearly is wrong as to the rejection of her subjective *mental-*impairment complaints. The Administrative Law Judge devoted at least one substantial paragraph, supported by substantial evidence, for finding her to be less mentally impaired than she asserted. *See* AR 243 (second and third paragraphs). Among other factors, the Administrative Law Judge cited the "routine outpatient" nature of the care she received, as opposed to a severe condition requiring hospitalization, *see* AR 291-340; her extensive

failure to comply with prescribed treatments, a failure which led to her apparently involuntary discharge from care in 2003; and the fact that, although her mental examinations showed some sadness and depression, her results were largely within normal limits. Perhaps most importantly, however, the Administrative Law Judge implicitly relied on Plaintiff's own admission, at the hearing, that "she believed that if she were offered a job in a quiet setting without public contact, she could work." AR 243; *see* AR 365 (Plaintiff answers "I don't think so" when asked, "is there some reason that you wouldn't be able to do that kind of job?"). It is self-evident that an Administrative Law Judge is entitled to rely on a claimant's own testimony that she could work in such a job setting (which is the sort of job to which the Administrative Law Judge indeed limited Plaintiff in this case, *see* AR 243 (fifth paragraph) – and that such testimony soundly gainsays any assertion by Plaintiff that her mental-ailment symptoms prevented her from working.

The Administrative Law Judge also gave adequate reasons for finding Plaintiff could work notwithstanding her arthritis pain, although he supplied fewer details than he did in rejecting her mental-ailment complaints. Again, the critical reason is that Plaintiff – who, he noted, treats her arthritis pain conservatively, with Motrin – herself admitted that she could do the kinds of work that the Administrative Law Judge found she could do. The underlying opinion also noted Plaintiff's routine activities included driving, shopping and interacting with people at the grocery store (although the Administrative Law Judge did not expressly indicate that he was relying on such activities to discount her pain testimony); but Plaintiff's admission of her ability to work is alone sufficient to support rejection of any contrary assertion based on allegedly disabling pain.

## IV.

## THIRD-PARTY STATEMENTS

Plaintiff next argues that the opinion fails to comply with the terms of this Court's remand with respect to a third party's supportive statements. In 2003, in a prior action challenging a prior benefits denial, the parties stipulated to a remand, with the

following as the sole stated purpose: "for development of the record and for evaluation of the statement from the plaintiff's friend, Ms. Teresa Leyva [(AR) 85-90]." (The record includes two statements by Ms. Leyva, one made in July 1998 and the other in December 1998. The latter is reproduced at AR 115-20.) The Appeals Council added that the prior "decision mentioned [Leyva's] statements but did not provide an evaluation of them. . . . [¶] The Administrative Law Judge will evaluate the lay witness statements." AR 267.

Among other things, Ms. Leyva indicated in her July 1998 statement that Plaintiff "sometimes" wears (the same) clothes for three days, gets help from her children with chores and shopping (although Ms. Leyva did not respond to the part of the questionnaire asking "How frequently" Plaintiff receives such help) and sometimes repeats things, suggesting, to Ms. Leyva at least, a poor memory. *See* AR 86, 89. But Ms. Leyva responded to numerous parts of that questionnaire with "unknown" or the equivalent. *See* AR 85 ("not sure" of Plaintiff's normal sleeping hours), 86 ("unknown" what difficulties, if any, Plaintiff has in sleeping; "unknown" who prepares and cooks Plaintiff's meals and what type of foods she cooks or how often), 87 ("unknown" as to Plaintiff's consumption of television and radio programming). Several other responses were qualified ones, such as "none that I know of," suggesting Ms. Leyva was less than closely familiar with Plaintiff's routine activities.

By later in 1998, Ms. Leyva apparently had discovered Plaintiff's sleep habits, for her second statement, from December of that year, indicates that Plaintiff "sleeps a lot." AR 116. The December 1998 statement also adds new reports that Plaintiff was suffering panic attacks. AR 116, 120. As with the July statement, however, Ms. Leyva again responded "unknown" or the equivalent numerous times. *See* AR 115-20.

The new opinion explained that Ms. Leyva's statements "are given little weight. The person completing the questionnaire[s] obviously did not know much about the claimant's activities of daily living and answered most of the questions with 'unknown.'" AR 243. This rejection was not error, for two independent reasons. First, it surely is a "specific reason[]," supported by substantial evidence, "germane to the

particular witness." *See Dodrill v. Shalala*, *supra*, 12 F.3d at 919. That Ms. Leyva did not have enough familiarity with Plaintiff's routines to answer many – if not quite "most," as the Administrative Law Judge overstates – of the standardized questions in the Third Party Daily Activities Questionnaire amply supports a critical view of the answers she did make, even if another Administrative Law Judge reasonably may have chosen to be less critical. Second, even if the stated rationale was insufficient, any error was harmless. As noted above, the Administrative Law Judge found that Plaintiff suffers from a "severe" panic disorder justifying numerous substantial restrictions on the kinds of work she can do. Even if fully credited, Ms. Leyva's statements do not demonstrate a need for greater restrictions than those already found.

## V.
## 1998 PSYCHIATRIC EVALUATION

Plaintiff asserts that a 1998 psychiatric evaluation by Barry Edelman, M.D., *see* AR 188-93, is ambiguous and thus requires a record-development remand. The Court disagrees. In the portion of Dr. Edelman's report cited by Plaintiff, he noted she was "able to sustain concentration somewhat." AR 192. As a preliminary matter, even if this statement were read in a light most favorable to Plaintiff, it would not require any greater concentration-related job restrictions than those already found by the Administrative Law Judge. In any event, the evaluation as a whole was unambiguous. Dr. Edelman bluntly labeled Plaintiff "a fairly poor and unreliable historian." AR 188. While Plaintiff herself "denied use of heroin," Dr. Edelman noted, "[a] review of the records in the chart show[s] a note by an emergency medicine physician, dated January of 1996, [indicating] that the patient had a history of opioid abuse and methadone treatment, including intravenous heroin abuse." AR 189. (Taken in isolation, Plaintiff's "den[ying] use of heroin" might be construed as her denial only of *current or recent* use, but another note later of the same page of the report expressly states that she "denied use of recreational drugs, either now or in the past[.]" *Id.*) Notwithstanding Dr. Edelman's discounting of Plaintiff's reliability,

he opined that she could handle her own funds, AR 193, noted that she reads novels, AR 189, and concluded that she is able to dress, bathe, cook and perform other household chores. *Id.* These observations are not at odds with the Administrative Law Judge's finding that Plaintiff could perform simple, repetitive work, with significant restrictions due to her panic disorder. Plaintiff's cherry-picking of an isolated statement in the report does not persuade the Court that any ambiguity existed (or that, if a slight ambiguity did exist, it requires further development of the record). *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (duty to develop record further triggered only when existing record is ambiguous or insufficient to reach conclusion).

Plaintiff's final argument is that the hypothetical question posed to the vocational expert was fatally incomplete because it lacked any reference to Dr. Edelman's "able to sustain concentration somewhat" comment. Any possible such error was harmless, however. As noted above, the Administrative Law Judge already found that plaintiff has "moderate restriction" in "maintaining concentration," and limited Plaintiff's range of work accordingly. *See* AR 243, 366.

## VI.
## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: September 19, 2007

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE